1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           CENTRAL DISTRICT OF CALIFORNIA

10   TINA THOMPSON,                    )   Case No. ED CV 08-1603 PJW
                                       )
11             Plaintiff,              )
                                       )   MEMORANDUM OPINION AND ORDER
12        v.                           )
                                       )
13   MICHAEL J. ASTRUE,                )
     Commissioner of the              )
14   Social Security Administration,   )
                                       )
15             Defendant.              )
     _____ )
16

17        Before the Court is Plaintiff's appeal of a decision by Defendant

18   Social Security Administration ("the Agency"), denying her application

19   for Supplemental Security Income benefits ("SSI").  Because the

20   Agency's decision that Plaintiff was not disabled within the meaning

21   of the Social Security Act is supported by substantial evidence, it is

22   affirmed.

23        On December 8, 2005, Plaintiff applied for SSI.  (Administrative

24   Record ("AR") 29.)  After the Agency denied the application, Plaintiff

25   requested and was granted a hearing before an Administrative Law Judge

26   ("ALJ").  (AR 33-40.)  On April 30, 2007, Plaintiff appeared with

27   counsel at the hearing and testified.  (AR 187-202.)  On May 24, 2007,

28   the ALJ issued a decision denying benefits.  (AR 7-16.)  After the

1  Appeals Council denied Plaintiff's request for review, (AR 3-5), she
2  commenced this action.

3      Plaintiff claims that the ALJ erred by failing to properly
4  consider: 1) the treating psychologist's mental status examination
5  findings; 2) the treating psychologist's work capacity evaluation; and
6  3) the written testimony of Plaintiff's sister Latania Toliver.
7  (Joint Stip. at 3-4, 7-8, 10-11.)  For the reasons set forth below,
8  the Court finds that these claims are without merit.

9      In her first claim of error, Plaintiff contends that the ALJ
10  improperly rejected, without explanation, the findings contained in a
11  mental status examination form filled out by her treating psychologist
12  Rigoverto Briceno.  (Joint Stip. at 3-4.)  For the following reasons,
13  the Court disagrees.

14      Plaintiff first went to see Dr. Briceno on September 7, 2006.
15  During this first visit, Dr. Briceno prepared a mental status
16  examination form, indicating that Plaintiff appeared anxious, had poor
17  concentration, and was "highly distractible."  (AR 185.)  He also
18  noted that her memory was impaired, that her behavior was destructive,
19  and that she reported experiencing visual and auditory hallucinations.
20  (AR 185.)

21      In her decision, the ALJ highlighted these findings but also
22  noted that Dr. Briceno had reported on the same form that Plaintiff
23  was fully oriented, her cognition, insight, and judgment were intact,
24  and she displayed normal affect.  (AR 13.)   In addition, the ALJ
25  pointed out that Plaintiff had reported to Dr. Briceno that she was
26  attending school and caring for her two sons.  (AR 13.)  After taking
27  into account the less severe diagnosis of examining psychiatrist David
28  Bedrin (discussed *infra*), the ALJ concluded that Plaintiff's history

of bipolar disorder was a severe impairment, which would cause slight restrictions in activities of daily living and social functioning, and moderate limitations on ability to perform activities requiring concentration, persistence, and pace.  (AR 11, 14.)

Plaintiff takes exception to these findings.  Though she concedes that the ALJ considered Dr. Briceno's mental status examination in the decision, she argues that the ALJ's failure to discuss the report of visual and auditory hallucinations, the "aggressive-destructive-poor impulse control problems," the excessive crying, and the isolated and withdrawn demeanor amounts to a "rejection" of these findings without adequate justification.  The Court disagrees.

The starting point for a discussion of the ALJ's treatment of the treating psychologist's report is the ALJ's credibility finding.  She found that Plaintiff was not credible, (AR 19), and the record supports this finding.  For example, Plaintiff, at the very least, grossly exaggerated her condition and, at the very worst, flat out lied about it in a form she filled out and submitted to the Agency.  (AR 66-73.)  In that form, entitled "Function Report-Adult," Plaintiff described her activities from the time she woke up until the time she went to bed as follows:

> I just sit around[,] cry, rock back and forth[,] and talk to myself and God and try to be quiet and try to rest to [the] best of my knowledge.  And take my motrins and milk [and] advils.

(AR 66.)

The person Plaintiff described to the Agency in this form is someone who would likely be institutionalized, not someone who reported at various times to various doctors that she was taking care

3

of herself and her 13- and 15-year old sons and going to school.
Further, and importantly, Plaintiff has not challenged the ALJ's
credibility finding, which undermines her claim that the ALJ erred in
rejecting the treating psychologist's findings without proper
justification.  Where, as here, a claimant does not challenge the
ALJ's adverse credibility finding, she cannot argue that the ALJ erred
in her decision not to credit the treating psychologist's assessment,
which was based in large part on Plaintiff's statements to the doctor.
*See Siska v. Barnhart*, No. C 00-4788 MMC, 2002 WL 31750220, at *3
(N.D. Cal. Dec. 4, 2002).

     Turning now to the merits of Plaintiff's claim, the Court finds
that the ALJ did not err.  Dr. Briceno's "findings" in the mental
status examination report were not really findings, but, rather,
parroting of what Plaintiff told the doctor that she was experiencing.
Dr. Briceno did not witness Plaintiff crying, rocking, seeing things,
or hearing voices.  (AR 184-85.)  What he did observe was someone who
was fairly stable, except, perhaps, for some anxiety.  (AR 185.)
Plaintiff was clean, appropriately dressed, spontaneous, friendly,
cooperative, and oriented.  (AR 185.)  Her affect was normal and her
cognition, insight, and judgment intact.  (AR 185.)  These findings
are consistent with the ALJ's ultimate conclusion that Plaintiff's
psychiatric impairments did not prevent her from working.  Because Dr.
Briceno's "findings" in the mental status examination report were

4

1   based on Plaintiff's allegations, and because Plaintiff was not

2   credible, her argument that the ALJ erred in rejecting these findings

3   is not persuasive.[1]

4       Plaintiff's complaint that the ALJ failed to fully discuss Dr.

5   Briceno's findings is also without merit.  The ALJ summarized

6   Briceno's findings in her decision.  (AR 13.)  She was not required to

7   fully evaluate every entry Dr. Briceno made, so long as her decision

8   was supported by substantial evidence, which it was.  *See Howard ex*

9   *rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (holding

10  that ALJ's failure to discuss particular medical report was not error

11  where the record showed the ALJ did not "selectively analyze the

12  evidence.").  For this reason, this claim does not warrant remand or

13  reversal.[2]

14      In her second claim of error, Plaintiff contends that the ALJ

15  improperly rejected Dr. Briceno's work capacity evaluation findings.

16  (Joint Stip. at 7-8.)  Again, the Court disagrees.

17

18

19

20      [1]  The Court also notes that it appears that Plaintiff was
    focused throughout her treatment sessions with Dr. Briceno on her
21  financial condition, even confessing to him during one session that
    she was worried about her "SSI application."  (AR 180.)

22

23      [2]  The ALJ also rejected Plaintiff's claims because she found
    that Plaintiff had not established that her condition had lasted or
    would last for 12 months, as required under the regulations.  (AR 14.)
24  The regulations do require a 12-month period of infirmity, *see* 20
    C.F.R. 416.927(d), and the records establish that Plaintiff underwent
25  treatment for only four months, from September 7, 2006 to January 22,
26  2007.  (AR 178-86.)  The only other evidence relating to the duration
    of Plaintiff's psychiatric problems was her written submissions to the
27  Agency and her testimony at the hearing, which were not believed.
    This is another specific and legitimate reason for rejecting
28  Plaintiff's claimed impairment.

On a "Work Capacity Evaluation (Mental)" check-the-box form dated October 30, 2006, Dr. Briceno indicated that Plaintiff would have "marked" limitation in her ability to do such things as remember locations and work-like procedures; carry out very short and simple instructions; sustain an ordinary routine without special supervision; ask simple questions or request assistance; and maintain socially appropriate behavior or adhere to basic standards of neatness and cleanliness. (AR 155-56.) He also indicated that she would have "extreme" limitation in her ability to do such things as understand and remember very short and simple instructions; maintain attention and concentration for extended periods; maintain regular attendance, and be punctual; and interact appropriately with the general public. (AR 155-56.) The ALJ rejected these findings and adopted the less severe functional limitations assessed by examining psychiatrist Bedrin. (AR 14.) This was not error.

Though, as a general rule, a treating doctor's opinion is given priority over the opinions of non-treating doctors, an ALJ may reject a treating doctor's opinion that is contradicted by another doctor's opinion so long as she provides specific and legitimate reasons supported by substantial evidence in the record for doing so. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Briceno's findings were squarely contradicted by Dr. Bedrin's, who examined Plaintiff in July 2006. (AR 13, 14.) In his report, Dr. Bedrin noted many of the same complaints Dr. Briceno did. (127-28.) Plaintiff told Dr. Bedrin that she had been experiencing auditory hallucinations for three years, and that for eighteen months she had experienced visual hallucinations of "something passing by out of the corner of her eye." (AR 127.) He noted her feelings of

1  paranoia, intermittent depression, and difficulties in sleeping and

2  eating.  (AR 127, 128.)  He also observed that Plaintiff was pleasant

3  and relaxed, did not appear depressed or anxious, denied suicidal or

4  homicidal ideations, denied any hallucinatory, delusional, or

5  psychotic symptoms during the interview, and was oriented.  (AR 130.)

6      Dr. Bedrin diagnosed bipolar disorder, not otherwise specified,

7  by history, and alcohol abuse, currently in remission, and assigned a

8  GAF score of 59.  (AR 132.)  He concluded that Plaintiff could

9  function normally in the workplace, but that she might have difficulty

10  performing complex tasks due to memory problems.  (AR 132.)

11     The ALJ was tasked with deciding which opinion to accept and

12  which to reject.  In doing so, she was required to provide specific

13  and legitimate reasons supported by substantial evidence if she chose

14  Dr. Bedrin's findings over Dr. Briceno's.  She did.  She discounted

15  Dr. Briceno's findings because they were not supported by the findings

16  in his mental status examination or by the progress notes that

17  followed.  In the mental status examination, which took place in

18  September 2006, less than two months before he completed the work

19  capacity evaluation, Dr. Briceno found that Plaintiff was clean and

20  that her attire and eye contact were appropriate.  (AR 185.)  By

21  contrast, in the work capacity evaluation he indicated that she would

22  have a "marked" limitation in her ability to "maintain socially

23  appropriate behavior and to adhere to basic standards of neatness and

24  cleanliness."  (AR 156.)  Similarly, Dr. Briceno found in September

25  2006 that Plaintiff's judgement and insight were intact and her

26  thought process goal-directed.  (AR 185.)  Yet, in October 2006, he

27  indicated that she would be extremely limited in her ability to make

28  work-related decisions and markedly limited in her ability to ask

7

1   simple questions, request assistance, be aware of normal hazards, and

2   take appropriate precautions.  (AR 155, 156.)

3       Though the clinical progress notes do not reveal any outright

4   inconsistencies, they consist only of Dr. Briceno's recordation of

5   Plaintiff's subjective complaints, i.e., that she felt depressed,

6   irritable, and worried, and the doctor's advice that she adopt

7   strategies to express anger more appropriately and to feel more

8   motivated.  (AR 178-82.)  As such, the notes do not support the

9   extreme limitations indicated by Dr. Briceno in October 2006.  The ALJ

10  was entitled to rely on these reasons for adopting Dr. Bedrin's

11  opinion and rejecting Dr. Briceno's.  *See, e.g.*, *Thomas v. Barnhart*,

12  278 F.3d 948, 957 (9th Cir. 2002) (affirming rejection of self-

13  contradictory and unsupported treating opinion in favor of examining

14  opinion); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995)

15  (affirming ALJ's rejection of treating opinion which was conclusory

16  and self-contradictory).  This is particularly true in this case,

17  where the ALJ determined that Plaintiff was not credible and Plaintiff

18  has not challenged that finding.  *Siska*, 2002 WL 31750220, at *3.  As

19  such, the Court finds that this claim is without merit.

20      In her third claim of error, Plaintiff contends that the ALJ

21  failed to consider the testimony of her sister Latania Toliver.

22  (Joint Stip. at 10-11.)  Toliver submitted a report, titled Adult

23  Function Report-Third Party, in which she reported that Plaintiff

24  "does not do anything" except talk about her headaches, talk to

25  herself, and rock.  (AR 74.)  She also reported that Plaintiff has

26  really bad mood swings, that she no longer does chores, and that "she

27  forgets a lot following instructions."  (AR 75, 76, 79.)  The ALJ did

28  not consider Toliver's testimony.  The Agency concedes that this was

8

1  error but argues that the error was harmless.  (Joint Stip. at 11-13.)
2  For the following reasons, the Court agrees.

3      An ALJ is required to consider lay witness "testimony," which
4  includes not only live testimony at the administrative hearing but
5  also written submissions, and may only reject it for reasons that are
6  "germane" to the witness.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d
7  1050, 1053 (9th Cir. 2006).  Failure to discuss lay testimony is
8  error.  The error is harmless, however, if the Court can "confidently
9  conclude that no reasonable ALJ, when fully crediting the testimony,
10 could have reached a different disability determination."  *Id.* at
11 1056.

12     Had any reasonable ALJ considered Ms. Toliver's submission, she
13 would not have concluded that Plaintiff was disabled.  First, Ms.
14 Toliver's report makes clear that she does not really know about
15 Plaintiff's daily routines and how they are (or are not) affected by
16 her condition.  For example, in response to the question "Does
17 [Plaintiff] prepare []her own meals?", Toliver checked the box marked
18 "No," but explained, "I don't really know if she does or not."  (AR
19 76.)  In response to the question, "Is []she able to: handle a savings
20 account/use checkbook money orders?", Ms. Toliver checked the box
21 marked "No," and then wrote "I don't know" in response to the
22 instruction, "Explain all 'NO' answers."  (AR 77.)  Ms. Toliver
23 responded to the question, "What are []her hobbies and interests?,"
24 with "None at all, TV sometimes, church sometimes," and then stated "I
25 don't know" in response to the follow-up question, "How often and how
26 well does []she do these things?"  (AR 78.)  Ms. Toliver answered "I
27 don't know" in response to questions about Plaintiff's social
28 activities, her ability to get along with authority figures, whether

she had ever been fired, and how well she handled stress.  (AR 78, 79,
80.)  Additionally, Ms. Toliver's answers are vague and often
inconsistent regarding Plaintiff's abilities.  For example, though she
states that Plaintiff "does not do anything" except talk to herself
and rock, she also states that Plaintiff prepares food for her sons,
likes to walk, goes shopping, pays bills, counts change, goes to
church, and watches TV.  (AR 74-78.)  Though Ms. Toliver reported that
Plaintiff was physically limited in various ways, (AR 79), no doctor
found that to be the case, and Plaintiff does not challenge the ALJ's
finding that the only physical limitation she had was her hearing.
Because Ms. Toliver's testimony, even if credited, would not have
resulted in a finding of disability, this claim does not merit
reversal or remand.[3]  *Stout*, 454 F.3d at 1056.

        For all of the above reasons, the Agency's decision is affirmed.

        IT IS SO ORDERED.

        DATED: August   26  , 2009.

                                    _____
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE


S:\PJW\Cases-Soc Sec\THOMPSON,T 1603\Memo_Opinion.wpd

_____

        [3]  Ms. Toliver also noted that Plaintiff was not good at
following instructions.  (AR 79.)  Consistent with this, the ALJ
concluded that Plaintiff was restricted to work "not involving more
than simple tasks at a routine pace."  (AR 15.)